# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:08 CV 370-MR-DSC
## CONSOLIDATED

| | |
|---|---|
| DAMION HURTH, JEFFREY L. BROWN, CARLOS MCCUNE, and KEVIN D. CALLAHAN, ) ) ) ) ) | |
| Plaintiffs, ) ) | **MEMORANDUM AND RECOMMENDATION AND ORDER** |
| v. ) ) | |
| BRADMAN LAKE GROUP LTD, ) LANGLEY HOLDINGS, PLC, ) and BRADMAN LAKE, INC., ) ) | |
| Defendants. ) ) | |

**THIS MATTER** is before the Court on the following Motions:

1. "Defendants' Motion to Dismiss" (document #41) filed April 29, 2009;

2. "Defendants' Motion to Strike [Plaintiffs' Response to Motion to Dismiss]" (document #55) filed May 20, 2009;

3. "Plaintiffs' Motion to Strike Defendants' Reply [in Support of Motion to Dismiss] ..." (document #61) filed June 8, 2009;

4. Defendants' "Motion to Compel Discovery from Plaintiff Brown" (document #79) filed June 19, 2009; and

5. Plaintiff Brown's "Joint Motion to Extend Deadlines ..." (document #88) filed July 27, 2009; as well as the parties' associated briefs and exhibits (documents ## 42-51, 53, 57-60, 62, 64, 72, 76, 78, 80, 81, 86, 87, 89, 90 and 93).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(B), and these Motions are now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that Defendants' Motion to Dismiss be granted. Further, the Court will grant Defendants' "Motion to Strike [Plaintiffs' Response to Motion to Dismiss]," Defendants' "Motion to Compel Discovery from Plaintiff Brown," and Plaintiff Brown's "Joint Motion to Extend Deadlines ..." and will deny "Plaintiffs' Motion to Strike Defendants' Reply [in Support of Motion to Dismiss]," as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

In this consolidated action,[1] the Plaintiffs, who are African-American and are each former or current employees of the Defendant Bradman Lake, Inc., seek damages and equitable relief for discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"); the Americans with Disabilities Act ("the ADA") 42 U.S.C. § 12112, et. seq. and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq.; as well state law claims under North Carolina's Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-241(a) et seq., state public policy, and state common law.

Defendant Bradman Lake, Inc. is a North Carolina corporation located in Charlotte, North Carolina that manufactures wrapping and packaging machinery and is a subsidiary of the other Defendants, Bradman Lake Group Ltd. and Langley Holdings, PLC, which are holding companies domiciled in the United Kingdom.

---

[1] Initially, Plaintiff Hurth filed a Complaint, which he subsequently amended, in File No. 3:08CV370, while the other Plaintiffs filed a joint Complaint in File No. 3:08CV389. On October 15, 2008, the District Judge to whom this case is assigned (the Honorable Martin Reidinger) granted the Plaintiffs' Motion to Consolidate the two proceedings under the current file number.

2

On April 29, 2009, Defendants filed their Motion to Dismiss, seeking dismissal of the following portions of the Complaints:

1. All claims against Defendants Bradman Lake Group Ltd. and Langley Holdings, PLC on grounds of lack of personal jurisdiction;

2. Plaintiff McCune's ADA claim on grounds that he failed to exhaust his administrative remedies as to that claim;

3. Plaintiffs' REDA and public policy claims on grounds that Plaintiffs failed to exhaust their administrative remedies as to their direct REDA claim and that REDA states no public policy which could be actionable in the present context;

4. All remaining claims brought by Plaintiff Hurth (Title VII, breach of contract, tortious interference with contract, and intentional or negligent infliction of emotional distress) on grounds that even taking his factual allegations as true, he has failed to state any claim upon which relief can be granted.

More detailed facts relevant to these diverse issues will be stated in Section II, below.

On May 19, 2009, Plaintiffs filed their "Response ..." (document #53) opposing the Defendants' dispositive Motion. As Plaintiffs concede, their initial brief, which is 34 pages long and in 12-point font, does not comply with the "Pretrial Order and Case Management Plan" (document #30) which requires that briefs be no more than 25 pages in length and typed in 14-point or larger type. Defendants filed their Motion to Strike the offending brief. Plaintiffs responded by submitting a second "Corrected ... Response ..." (document #60) which is compliant with page and type limitations. Defendants have not objected to the second brief. Accordingly, Defendants' Motion to Strike Plaintiffs' "Response ..." (document #53) is <u>granted</u> and the Court has considered, instead,

Plaintiffs' "Corrected ... Response ..." (document #60) in making the recommendations stated below.

On June 1, 2009, Defendants filed their "Reply ..." (document #57) in support of their Motion to Dismiss, to which Plaintiffs responded with their own Motion to Strike, contending that Defendants' Reply was untimely. As the docket reflects, however, Defendants' Reply was due June 1, 2009, the date it was filed, and accordingly, Plaintiffs' Motion to Strike is denied.

As to Defendants' Motion to Compel, on March 20, 2009, Defendants served their "First Set of Interrogatories and Request to Produce Documents to Plaintiff Jeffrey Brown." On June 19, 2009, and after responses to those requests were overdue, Defendants filed their Motion to Compel. On July 16, 2009, Plaintiff Brown, who in the interim had retained new counsel, served discovery responses, which he contends in his "Response..." (document #86) are now complete. In their "Reply ..." (document #87), however, Defendants highlight several ongoing deficiencies in those responses, including that Plaintiff Brown in fact responded to requests served on Plaintiff McCune, rather than those served on Plaintiff Brown, that potential witnesses were not fully identified, and that medical records have not been fully produced. Accordingly, the undersigned will grant Defendants' Motion to Compel and require Plaintiff Brown to respond fully and without objection to Defendants' discovery requests.

On July 27, 2009, Plaintiff Brown filed "Plaintiffs' Joint Motion to Extend Deadlines ..." (document #88), which after conferring with Judge Reidinger's chambers, the undersigned will grant as ordered in Section III, below.

The remaining issues are those raised in Defendants' Motion to Dismiss which has been fully briefed and is, therefore, ripe for disposition.

## II. DISCUSSION OF CLAIM

**A. Motion to Dismiss for Lack of Personal Jurisdiction**

In evaluating a motion to dismiss for lack of personal jurisdiction, all factual disputes must be resolved in favor of the non-moving party, who must make a prima facie showing that exercise of personal jurisdiction is proper. See Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); Vishay Intertechnology, Inc. v. Delta International Corp., 696 F.2d 1062, 1064 (4th Cir. 1982); and General Latex and Chemical Corp. v. Phoenix Medical Technology, Inc., 765 F. Supp. 1246, 1248 (W.D.N.C. 1991).

Analysis of personal jurisdiction has traditionally involved two determinations: "whether the [particular state's] long-arm statute authorizes the exercise of jurisdiction in the circumstances presented and ... whether the exercise of jurisdiction comports with Fourteenth Amendment due process standards." Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). However, because "the North Carolina long-arm statute [N.C. Gen. Stat. § 1-75.4] has been interpreted as the legislature's attempt to allow the exercise of personal jurisdiction in all cases where such jurisdiction does not contravene due process, [the] normal two-step inquiry merges into one." Id., citing Dillon v. Numismatic Funding Corp., 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977).

The exercise of personal jurisdiction comports with due process when the defendant purposefully established "minimum contacts" in the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Ellicott Mach., 995 F.2d at 477. In addition, the court's exercise of personal jurisdiction must comport with traditional notions of "fair play and substantial justice." World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980) (personal

jurisdiction exists where defendant introduces product into stream of commerce with expectation that citizens in forum state will use the product).

Later cases have emphasized that the minimum contacts must be "purposeful." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). This "purposeful" requirement rests on the basic premise that traditional notions of fair play and substantial justice are offended by requiring a non-resident to defend himself in a forum state when the non-resident never purposefully availed himself of the privilege of conducting activities within the forum state, thus never invoking the benefits and protections of its laws. See Hanson v. Denckla, 357 U.S. 235, 253 (1958). Moreover, "this purposeful requirement helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." Plant Genetic Systems, N.V. v. Ciba Seeds, 933 F.Supp. 519, 523 (M.D.N.C. 1996), citing Burger King, 471 U.S. at 472; and World Wide Volkswagen, 444 U.S. at 297.

A court's exercise of personal jurisdiction may be specific or general. General personal jurisdiction exists, even when an action does not arise out of the non-resident defendant's contact with the forum state, if the non-resident defendant has had continuous and systematic contact with the forum state. Helicopteros Nacionales de Columbia S.A. v. Hall, 466 U.S. 408, 414-15 (1983). Specific jurisdiction involves the exercise of personal jurisdiction over a defendant in an action arising out of the defendant's contacts with the forum state. See Helicopteros, 466 U.S. at 414; McGee v. International Life Ins. Co., 355 U.S. 220, 225 (1957) (single contract which is subject of the action and which was formed in forum state provides basis for personal jurisdiction); English & Smith v. Metzger, 901 F.2d 36, 39 (4th Cir. 1990) (same); and Prince v. Illien Adoptions Int'l Ltd., 806 F.Supp. 1225, 1227 (D. Md. 1992) (same).

Where a court seeks to assert specific jurisdiction over a non-resident defendant, the fair warning requirement inherent in due process still demands that the non-resident defendant have purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking its benefits and protections. See, e.g., Federal Ins. Co. v. Lake Shore, Inc., 886 F.2d 654, 660 (4th Cir. 1989).

In a parent-subsidiary context, it is well settled that so long as the corporations have retained separate corporate identities, a subsidiary's presence in the forum state does not confer personal jurisdiction over its parent corporation. Accord Mylan Labs. Inc. v. Azko, 2 F.3d 56 (4th Cir. 1993); Setra of North America v. Motorcoach Financial, Inc., 367 F. Supp. 2d 853, 859 (M.D.N.C. 2005) (in order to impute subsidiary's presence to parent, plaintiffs must "pierce the corporate veil and establish that [parent corporations] wholly ignored the separate status of [subsidiary] and that the separate existence of the...companies is a mere sham"); and Ash v. Burnham Corp., 80 N.C. App. 459, 462-63, 343 S.E. 2d 2, 4-5 (1986) (mere presence of corporate subsidiary does not subject a parent corporation to jurisdiction in North Carolina).

Applying these legal principles to the jurisdictional facts and resolving any factual disputes in Plaintiffs' favor, they have failed to make a prima facie showing that grounds exist for exercising personal jurisdiction over Defendants Bradman Lake Group Ltd. and Langley Holdings, PLC (hereafter "UK Defendants"). Indeed, the only contact the UK Defendants have had with this forum, aside from their status as parent corporations to Defendant Bradman Lake, Inc., has consisted of infrequent visits to the United States. See "Declaration of Bernard Watson" (document #44); and "Declaration of Kevin Baker" (document #43). The UK Defendants are incorporated in and maintain their principal places of business in England. Neither owns real property, has an office, employees,

a telephone number, mailing address, agent for service of process, or bank account in North Carolina. Id. Neither UK Defendant is licensed to do business in North Carolina and neither does any business in North Carolina. Id.

Nor have Plaintiffs made a prima facie showing that Defendant Bradman Lake, Inc.'s presence in this state should be imputed to the UK Defendants for jurisdictional purposes. It is undisputed that the UK Defendants are holding companies and neither engages in manufacturing or selling machinery – their subsidiary's primary activities. The UK Defendants have no employees in common with their subsidiary, which also maintains separate business records and tax returns. Id. More to the point, the UK Defendants do not direct the day-to-day operations of their subsidiary and did not participate in or exercise any control over the employment conditions and decisions about which Plaintiffs complain in this lawsuit.

Accordingly, where the UK Defendants have not had sufficient purposeful minimum contacts with North Carolina to permit the exercise of personal jurisdiction by courts in this forum, the undersigned will respectfully recommend that the Defendants' Motion to Dismiss be granted as to the UK Defendants.

**B. Failure to Exhaust Administrative Remedies on Plaintiff McCune's ADA Claim**

Prior to filing an employment discrimination action in federal court, including any claim under the ADA, a plaintiff is required to file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory activity. See 29 U.S.C. § 626(d); 42 U.S.C. § 2000e-5(e)(1), (f); 42 U.S.C.. § 12117(a); Delaware State College v. Ricks, 449 U.S. 250, 255 (1980) (Title VII); Felty v. Graves-Humphreys Co., 785 F.2d 516, 518-19 (4th Cir. 1986) (ADEA); and NAACP Labor Committee of Front Royal v. Laborers' International Union of North America, 902 F.Supp. 688, 699

(W.D.Va. 1993). Moreover, assuming a charge is timely filed, the subsequent action that a plaintiff may bring will be limited in scope to those claims contained in the administrative charge, as the Fourth Circuit has stated:

> [T]he allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint. . . . [T]he factual allegations made in formal litigation must correspond to those set forth in the administrative charge. For example, the plaintiff's claim generally will be barred if his charge alleges discrimination on one basis – such as race – and he introduces another basis in formal litigation – such as sex."

Chacko v. Patuxent Inst., 429 F.3d 505, 506-09 (4th Cir. 2005). See also, EEOC v. General Electric Co., 532 F.2d 359, 366 (4th Cir. 1976) ("Where ... claims raised [in litigation] ... exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred"); and Suarez v. Charlotte-Mecklenburg Sch., 123 F. Supp. 2d 883, 887 (W.D.N.C. 2000) (a proper charge ensures that the employer is adequately notified of the alleged violation and EEOC has an opportunity to resolve the complaint).

It is undisputed that Plaintiff McCune's EEOC charges were limited solely to allegations of retaliation, and never mentioned the ADA nor alleged disability discrimination. In his December 4, 2006 charge, McCune stated, "I believe that I am being discriminated against because of my association with individuals who filed charges against the company and in retaliation for having opposed practices made unlawful under Title VII of the Civil Rights Act." Exhibit A(4) to "Affidavit of Gary Pickett" (document #42). His May 24, 2007 charge, which he filed with assistance of his present counsel, similarly complained only of alleged retaliation concerning his termination. Id. at Exhibit A(5). McCune did not check the box to indicate any alleged disability discrimination or make any such allegation in the body of either charge. Id.

Accordingly, where Plaintiff McCune failed to file an administrative charge of disability

9

discrimination, his ADA claim is barred, and the undersigned will respectfully recommend that Defendants' Motion to Dismiss be granted as to that claim.

### C. REDA Claim and Public Policy Claim Under REDA

"The North Carolina legislature enacted REDA to provide workers with a method to remedy unsafe and illegal working conditions without being punished by their employer." Jurrissen v. Keystone Foods, LLC, 2008 WL 3925086, *4 (M.D.N.C. 2008), citing Brown v. Sears Auto. Ctr., 222 F.Supp.2d 757, 762 (M.D.N.C.2002). The Plaintiffs have pled a claim for violation of REDA, as well as a claim for wrongful discharge in violation of public policy based on the same statute.[2]

As the Defendants point out in their briefs, however, REDA provides relief in only limited, enumerated contexts, such as to workers who file workers' compensation claims or who complain of unsafe working conditions. REDA does not provide relief for alleged retaliation for making or filing a race discrimination complaint. See N.C. Gen. Stat. § 95-241(a) (2009).

Additionally, prior to filing a lawsuit against an employer for violation of REDA, a plaintiff must file an administrative claim with the North Carolina Department of Labor. Brackett v. SGL

---

[2]

The North Carolina Supreme Court has established the availability of a tort action for wrongful discharge in violation of public policy, but has not defined what constituted "public policy" for purposes of such a claim. The Court has stated that:

> Although the definition of "public policy" approved by this Court does not include a laundry list of what is or is not "injurious to the public or against the public good," at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes.

Amos v. Oakdale Knitting Co. 331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992). Since Amos, the North Carolina courts, in identifying "public policy," have looked not only to statutes, but also to the North Carolina constitution and state regulations. See, e.g., Deerman v. Beverly Cal. Corp., 135 N.C.App. 1, 12, 518 S.E.2d 804, 810 (1999) (Board of Nursing regulations); and Lenzer v. Flaherty, 106 N.C.App. 496, 515, 418 S.E.2d 276, 287 (1992) (free speech right under North Carolina constitution).

Carbon Corp., 158 N.C.App. 252, 257, 580 S.E.2d 757, 760 (2003) ("we hold the 180-day time limit for filing a REDA claim with the NCDOL is mandatory"). Where it is undisputed that Plaintiffs have never filed an administrative charge with the Department of Labor, their REDA claim and derivative public policy claim are barred.

For these reasons, the undersigned will respectfully recommend that Defendants' Motion to Dismiss be granted as to the Plaintiffs' REDA and public policy claims.

### D. Rule 12(b)(6) Motion to Dismiss Plaintiff Hurth's Claims

#### 1. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009), quoting Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this standard. First, the court identifies allegations that, because they are no more

than conclusions, are not entitled to the assumption of truth. 129 S. Ct. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1951 (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true), citing Twombly, 550 U.S. at 554-55. Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1951. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id., quoting Fed. R. Civ. P. 8(a)(2). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id. at 1951-52.

**2. Title VII Claim for Hostile Work Environment**

Plaintiff Hurth's Complaint is replete with generalized and conclusory allegations of discrimination, which as discussed above, are not entitled to the assumption of truth. Iqbal, 129 S. Ct. at 1951. Accepting as true the limited factual allegations of Plaintiff Hurth's Complaint

(including his EEOC charge and supporting Affidavit which were incorporated by reference), on June 3, 2007, he was sent by a temporary services agency to work at Defendant Bradman Lake, Inc. (hereafter "Defendant"). Hurth Affidavit at ¶ 2. On his first day of work or shortly thereafter, some other African-American employees told Plaintiff that there were racists working for Defendant. Id. at ¶ 4. During the "late morning" on June 13, 2007, a co-worker known as "T.K." called Plaintiff over to his work station and pressed the "play" button on a CD player. Plaintiff heard the following words in a song: "when you find that nigger of mine, you tell his black ass to stay where the fuck he been hiding." Id. Plaintiff immediately complained to his manager, Jay Michael. Id. Michael spoke to T.K. and came back to Plaintiff within 20 minutes. Id. Michael told Plaintiff that he informed T.K. "this was no place for music and talk like that . . . he needed to take the CD home." Id. At about 3:00 p.m. the same day, T.K approached Plaintiff and apologized, saying, "I'm sorry for what happened earlier, I'm sorry I did that." Id. Plaintiff declined to accept T.K's apology, but decided instead that he did not want to work for Defendant and did not go back to work the next day. Id. The temporary services agency then placed Plaintiff in another job where he made $1.00 per hour less than he had been making working for Defendant. Id.

> As the Fourth Circuit has stated:
>
> To demonstrate a racially-hostile work environment, [Plaintiff] must show that he was the subject of conduct that was (1) unwelcome; (2) based on race; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and that (4) there is some basis for imposing liability on the employer.

Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 190 (4th Cir. 2004) (citations omitted).

> There can be no doubt federal harassment standards are demanding. Indeed, the Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." The Supreme Court also has made it abundantly clear that the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" Title VII is

13

> violated only "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" We can determine "whether an environment is 'hostile' or 'abusive' . . . only by looking at all the circumstances[, which] may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." The Supreme Court has cautioned courts to be alert for workplace behavior that does not rise to the level of actionable harassment. . . . The Court often has made the point that "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" The Court implores lower courts to apply the demanding harassment standards to "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes and occasional teasing.'"

Al-Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1038-39 (8th Cir. 2005), quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998); Harris v. Forklift Sys. Inc., 510 U.S. 17, 21, 23 (1993); and Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 82 (1998)) (other internal citations omitted).

> "Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." Of course, whether [the supervisor's] slur was highly offensive, unwelcome, and racially motivated is not the issue – clearly, it was. Rather, the question is whether the use of racial epithets and abusive language so pervaded the work environment at the [facility] that it was essentially transformed into an atmosphere tinged with racial hostility and altered the conditions of [plaintiff's] employment. "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."

Shields v. Federal Express Corp., 120 Fed. Appx. 956, 961 (4th Cir. 2005), quoting Spriggs v. Diamond Auto Glass, 242 F.3d 179, 185 (4th Cir. 2001) and Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004). Accord Jordan v. Alternative Resources Corp., 458 F.3d 332, 339 (4th Cir. 2006) (single incident, unless extremely serious, cannot create hostile work environment as a matter of law); Lissau v. Southern Food Serv., 159 F.3d 177, 183 (4th Cir. 1998) ("Title VII does not

provide a remedy for every instance of verbal or physical harassment in the workplace"); Dawson v. United States Textile Corp., 2006 U.S. Dist. LEXIS 5078, at *13-19 (W.D.N.C. Jan. 20, 2006) (co-worker's use of the "N-word" on two different occasions fell "far short" of stating Title VII claim; granting defendant's motion to dismiss); and Greene v. Swain County Partnership for Health, 342 F. Supp. 2d 442, 455 (W.D.N.C. 2004) (Title VII was "not designed to provide a remedy for every instance of verbal or physical harassment in the workplace").

Applying these legal principles to Plaintiff's hostile work environment claim, he has failed to state a claim upon which relief can be granted. Although the co-worker T.K.'s conduct in playing the music with the offensive language quoted above was certainly reprehensible, it did not amount to the continuous, concerted behavior necessary to support a hostile work environment claim. Accord Jordan, 458 F.3d at 339; Lissau, 159 F.3d at 183; Dawson, 2006 U.S. Dist. LEXIS 5078, at *13-19; and Greene, 342 F. Supp. 2d at 455.

Moreover, an employer has no liability for co-worker harassment if it took prompt remedial action which resulted in the cessation of the complained of conduct. Spicer v. Commonwealth of Virginia Dep't of Corrections, 66 F.3d 705, 711 (4th Cir. 1995). Hurth's Complaint reveals that once he complained, his manager immediately spoke with the offending employee and reported back to Hurth in 20 minutes. In addition, the offending employee apologized to Hurth the same day. Defendant cannot have any liability for the actions of Hurth's co-worker which it promptly and effectively corrected. Id; see also, Fleenor v. Hewitt Soap Co., 81 F.3d 48, 51 (6th Cir. 1996) (employer has no liability where harassing conduct of a co-worker stopped as a result of its remedial action).

For these reasons, the undersigned will respectfully recommend that Defendants' Motion to

Dismiss be <u>granted</u> as to Plaintiff Hurth's Title VII hostile work environment claim.

### 3. Intentional or Negligent Infliction of Emotional Distress Claim

Plaintiff Hurth also seeks to recover for intentional or negligent infliction of emotional distress. As discussed above, the co-worker T.K.'s conduct was certainly reprehensible but does not rise to the level of the willful, outrageous misconduct sufficient to establish an intentional infliction of emotional distress claim, which requires:

> "(1) extreme and outrageous conduct by the defendant, (2) which is intended to cause and does in fact cause, (3) severe emotional distress." <u>Waddle v. Sparks</u>, 331 N.C. 73, 414 S.E.2d 22 (1992). In order for a defendant to be liable for intentional infliction of emotional distress, <u>defendant's conduct must exceed "all bounds usually tolerated by decent society.</u>" <u>Dickens v. Puryear</u>, 302 N.C. 437, 276 S.E.2d 325 (1981).

<u>Pardasani v. Rack Room Shoes Inc.</u>, 912 F.Supp. 187, 192 (M.D.N.C. 1996) (emphasis added).

Furthermore, "[i]n employment actions, North Carolina courts have been reluctant to find intentional infliction of emotional distress claims actionable." <u>Haburjak v. Prudential Bache Sec., Inc.</u>, 759 F. Supp. 293, 302-03 (W.D.N.C. 1991) (citing cases). <u>Accord</u> <u>Hogan v. Forsyth Country Club Co.</u>, 79 N.C. App. 483, 493-94, 340 S.E.2d 116, 123 (1986) (plaintiff's allegations that manager screamed profanities at her, called her names, threw things at her, refused her request for pregnancy leave of absence, directed her to carry heavy objects such as trash bags, vacuum cleaners, and bundles of linen weighing more than ten pounds, and refused her request to leave work to visit a hospital, while "unjustified under the circumstances," did not rise to the level of "extreme and outrageous as to give rise to a claim for intentional infliction of emotional distress").

Plaintiff's alternative claim for negligent infliction of emotional distress also fails. In order to establish an actionable claim, a plaintiff must show that the defendant (1) negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress, and (3) the conduct did in fact cause plaintiff severe emotional distress. Johnson v. Ruark Obstetrics & Gynecology Assoc., 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). North Carolina courts define "severe emotional distress" as an "emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia or any other type of severe and disabling emotional or mental condition..." Id. Not only has Plaintiff failed to allege that he suffers from any such disorder or condition, he has not alleged any conduct on the part of Defendant that would reasonably and forseeably cause such distress.

Accordingly, the undersigned will respectfully recommend that Defendants' Motion to Dismiss be granted as to Plaintiff Hurth's claim for intentional or negligent infliction of emotional distress.

### 4. Breach of Contract and Tortious Interference with Contract Claims

Plaintiff Hurth appears to base his breach of contract and tortious interference with contract claims on his belief that he was a third-party beneficiary of a contract between Defendant and the temporary agency that sent him to work for Defendant. In order to state either claim, Plaintiff must allege: (1) the existence of a contract between two other persons; (2) that is "valid and enforceable," and (3) which was entered into for his "direct, and not incidental benefit." United Leasing Corp. v. Miller, 45 N.C. App. 400, 405-06, 263 S.E. 2d 313, 317 (1980) (each element must be pled specifically, not "le[ft] to conjecture"). Plaintiff has not alleged the existence of a valid and enforceable contract, and assuming arguendo that he had made such a factual allegation, he has not

17

alleged that the such contract was created for his direct benefit. Accordingly, the undersigned will respectfully recommend that Plaintiff Hurth's breach of contract and tortious interference with contract also be <u>dismissed</u>.

### III. ORDER

**IT IS HEREBY ORDERED** that:

1. "Defendants' Motion to Strike [Plaintiffs' Response to Motion to Dismiss]" (document #55) is **GRANTED** and Document #53 is **STRICKEN**.

2. "Plaintiffs' Motion to Strike Defendants' Reply [in Support of Motion to Dismiss] ..." (document #61) is **DENIED**.

3. Defendants' "Motion to Compel Discovery from Plaintiff Brown" (document #79) is **GRANTED**. <u>Plaintiff Brown is **ORDERED** to serve complete responses, as discussed above, to Defendants' "First Set of Interrogatories and Request to Produce Documents to Plaintiff Jeffrey Brown" on or before September 8, 2009. Plaintiff shall supplement said responses as required by the Local Rules and Federal Rules of Civil Procedure</u>.

4. Plaintiff Brown's "Joint Motion to Extend Deadlines ..." (document #88) is **GRANTED**, that is:

   a. the discovery deadline is extended to October 5, 2009;

   b. the dispositive motions deadline is extended to November 5, 2009;

   c. the trial setting is reset to the first available term of court after March 1, 2010; and

   d. pretrial submissions shall be due one week prior to trial.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** as well as the other reasons stated in the Defendants' briefs, the undersigned respectfully recommends that "Defendants' Motion to Dismiss" (document #41) be **GRANTED**, that is:

1. That all claims against Defendants Bradman Lake Group Ltd. and Langley Holdings PLC be **DISMISSED WITHOUT PREJUDICE**;

2. That Plaintiffs' Retaliatory Employment Discrimination Act (REDA) and public policy claims be **DISMISSED WITH PREJUDICE**;

3. That Plaintiff McCune's Americans with Disabilities Act (ADA) claim be **DISMISSED WITH PREJUDICE**; and

4. That all of Plaintiff Hurth's remaining claims be **DISMISSED WITH PREJUDICE**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109

F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to counsel for the parties; and to the Honorable Martin Reidinger.

**SO ORDERED AND RECOMMENDED**.

Signed: August 14, 2009

David S. Cayer
United States Magistrate Judge